UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

| | |
|---|---|
| AXA VERSICHERUNG AG, on its own behalf and as Successor-in-Interest to ALBIGNIA VERSICHERUNG AG, and COLISEE RE, on its own behalf and as Successor-in-Interest to AXA REASSURANCE : : : : : : : : : | |
| Petitioners, : | |
| v. : | Civil Action No. |
| THE NEW HAMPSHIRE INSURANCE COMPANY, AMERICAN HOME ASSURANCE COMPANY, NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PENNSYLVANIA, AND AMERICAN INTERNATIONAL OVERSEAS, LTD., FOR THEMSELVES AND ON BEHALF OF CERTAIN AFFILIATED COMPANIES, : : : : : : : : : | |
| Respondents. : | |

_____

## PETITION TO APPOINT AN UMPIRE

Pursuant to Sections 5 and 206 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 5 and 206, petitioners AXA Versicherung AG and Colisée Re (collectively, "AXA") respectfully petition the Court to appoint an umpire in the manner provided in the parties' agreed Protocol for Umpire Selection in the pending arbitration between AXA and respondents The New Hampshire Insurance Company, American Home Assurance Company, National Fire Insurance Company of Pittsburgh, Pennsylvania, and American International Overseas, Ltd. (collectively "AIG"). In support of this petition, AXA states and alleges as follows:

## INTRODUCTION

1.      For the second time, AXA is forced to seek this Court's intervention to order AIG to comply with the umpire selection protocol in the parties' pending arbitration.

2.      Last time, it was AIG that brought the matter to court on the false premise that AXA had not complied with the protocol because AIG did not like the umpire candidates AXA put forward.  AIG demanded that the Court simply name one of AIG's candidates as umpire, without regard for the terms of the protocol.  AXA cross-petitioned for an order requiring AIG to comply.  The Court properly rejected AIG's ploy, persuading AIG to return to the protocol it had agreed to and comply with its obligations.

3.      More than three years have passed and AIG has still not learned its lesson.  The umpire the parties selected using the protocol has unfortunately resigned (for health reasons), and AIG once again refuses to comply with the protocol.  This time AIG does not even pretend to follow the protocol, which it did last time.  Instead – contrary to its sworn/verified statements to this Court in its prior petitions – AIG baldly proclaims that the protocol does not apply at all.

4.      There is no basis or excuse for AIG's conduct.  This arbitration is nearly five years old.  Delay has been AIG's primary defense strategy from the start, and its refusal to avail itself of the method for umpire selection in the protocol is just another one of AIG's delay tactics.

5.      The evidentiary hearing in the arbitration has already been rescheduled twice, and is now set to begin in May 2019.  The Court should appoint an umpire in the manner provided in the protocol so that there is no further delay of that hearing.

## THE PARTIES

6.      AXA Versicherung AG is a German corporation with its principal place of business in Cologne, Germany.  AXA Versicherung AG is the successor-in-interest to Albingia

Versicherung AG.

7.     Colisée Re is a corporation organized under the laws of France with its principal place of business in Paris, France.  Colisée Re is the successor-in-interest to AXA Reassurance.

8.     The New Hampshire Insurance Company is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York.

9.     American Home Assurance Company is a corporation organized under the laws of the State of New York with its principal place of business in New York, New York.

10.    National Union Fire Insurance Company of Pittsburgh, Pennsylvania is a corporation organized under the laws of the Commonwealth of Pennsylvania with its principal place of business in New York, New York.

11.    American International Overseas, Ltd. is a corporation organized under the laws of Bermuda, with its principal place of business in Hamilton, Bermuda.  American International Overseas, Ltd. is the successor-in-interest to American International Underwriters Overseas, Ltd.

## JURISDICTION AND VENUE

12.    This Court has subject matter jurisdiction pursuant to 9 U.S.C. § 203 because this action involves arbitration agreements falling under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958 ("Convention").

13.    This Court has personal jurisdiction over AIG because, among other things, the AIG respondents agreed to arbitration in New York, New York and have thus consented to personal jurisdiction.

14.    Venue is proper in this district because the parties agreed to arbitration in New York, New York.

## FACTS

15.     AIG and AXA Versicherung AG's predecessor, Albingia Versicherung AG and Colisée Re's predecessor, AXA Re, are parties to a series of reinsurance contracts, collectively known as Treaty 932.

16.     Each of the reinsurance contracts contains an arbitration clause, providing for disputes to be arbitrated before a panel of two arbitrators appointed by the parties and a neutral umpire:

> All disputes or differences arising out of the interpretation of this Agreement shall be submitted to the decision of two arbitrators, one to be chosen by each party, and in the event of the arbitrators failing to agree, to the decision of an umpire to be chosen by the two arbitrators.

17.     On November 8, 2013, AIG demanded arbitration against AXA.

18.     AXA and AIG each appointed their respective arbitrators as provided in the contracts.

19.     Through counsel, AXA and AIG agreed on a written protocol governing the selection of a neutral umpire. A true and correct copy of the protocol is attached as Exhibit A.

20.     The protocol replaces the umpire selection procedure in the contracts, providing that "The parties agree that this Protocol alone shall govern umpire selection in the arbitration, and that it displaces any prior written or oral agreements on umpire selection between the parties." Ex. A ¶ 7.

21.     In 2014, a dispute arose over application of the protocol. On or about July 2, 2014, AIG filed a petition to compel compliance with the protocol in the Supreme Court of the State of New York, County. A true and correct copy of the petition (without exhibits) is attached as Exhibit B.

22.     On or about July 14, 2014, AXA removed AIG's petition to this Court and, on

4

August 26, 2014, AIG filed an amended petition to appoint an umpire or to compel compliance with the umpire selection protocol.  A true and correct copy of AIG's amended petition (without exhibits) is attached as Exhibit C.

23.     In both of AIG's petitions, AIG attached the umpire selection protocol as an exhibit and specifically alleged that it governed the selection of an umpire in the parties' arbitration:

> Rather than follow the method for umpire selection specified in the Treaties, AXA asked whether AIG would be willing to negotiate an alternative methodology.  AIG agreed.

> The parties fully negotiated this alternative methodology with the understanding that every aspect of the umpire selection process (including such remote prospects as the need to resolve a 16-way tie) would be covered.

> The parties subsequently agreed through counsel on the terms of a written protocol governing the selection of an umpire.  A true and correct copy of the protocol (the "USP" or the "Protocol") is attached as Exhibit B.

Ex. B ¶¶ 16-18; Ex. C ¶¶ 22-24.

24.     Both of AIG's petitions were verified by AIG's lead counsel in the arbitration.

25.     AXA filed a cross petition and, on January 22, 2015, this Court held a hearing during which the parties agreed, with the Court's encouragement, to follow the protocol with a slight modification.  A true and correct copy of the January 22, 2015 transcript is attached as Exhibit D.

26.     Following the January 22, 2015 hearing, the parties completed the umpire selection process and an umpire was seated.  The parties' dispute under another reinsurance contract, Treaty 875, was also consolidated before the same arbitrators.  A three-week evidentiary hearing is currently scheduled to begin on May 20, 2019.

27.     On September 9, 2018, the umpire resigned for health reasons.

28.     The protocol sets forth a process for the umpire to be selected from lists submitted

by the parties.  Ex. A ¶ 2.

29.     To select an umpire under the protocol, lists of candidates from both parties must be assembled and detailed questionnaires must be sent to and completed by those candidates in order to determine, as of the current date, whether they are available, qualified, willing to serve or have any disabling conflicts.

30.     Given the years that have passed since the umpire was selected, and given the many events that have occurred, such as retirements (some candidates no longer accept appointments), disabilities, as well as changes to the parties' relationships with potential candidates, the selection process must start again.

31.     Following the umpire's resignation, AXA contacted AIG to commence the process under the protocol to select an umpire to replace the umpire who resigned.

32.     Rather than promptly begin the selection process under the protocol, AIG responded that it disagrees that the protocol applies.

33.     AIG has refused to exchange the lists of potential umpire candidates as set forth in the protocol.

## COUNT I

34.     Transactions under Treaty 932 involve "commerce" within the meaning of Section 1 of the FAA, 9 U.S.C. § 1.

35.     The arbitration clauses in Treaty 932 constitute a "valid, irrevocable, and enforceable" arbitration agreement within the meaning of Section 2 of the FAA, 9 U.S.C. § 2.

36.     The protocol replaces the umpire selection procedures in the arbitration clauses, and constitutes a "valid, irrevocable, and enforceable" part of the agreement to arbitrate within the meaning of Section 2 of the FAA, 9 U.S.C. § 2

37.     The protocol constitutes (i) a "provision . . . for a method of naming or appointing

an arbitrator or arbitrators or an umpire . . . [that] shall be followed" within the meaning of Section 5 of the FAA, 9 U.S.C. § 5; and (ii) a "provision[] of the [arbitration] agreement" for the appointment of arbitrators within the meaning of Section 206 of the FAA, 9 U.S.C. § 206.

38.     AIG has failed to avail itself of the method of naming or appointing an umpire set forth in the protocol.

39.     Pursuant to Sections 5 and 206 of the FAA, 9 U.S.C. §§ 5 and 206, the Court should appoint an umpire in the manner provided in the protocol.

## PRAYER FOR RELIEF

WHEREFORE, AXA respectfully requests the Court grant this petition and:

(a)    Appoint an umpire as provided in the agreed Protocol for Umpire
Selection by:

(i)    ordering the parties to exchange lists of umpire nominees as set
forth in paragraph 2 of the protocol;

(ii)   ordering the parties to jointly send each nominee the disclosure
questionnaire until each side has nominated 11 persons as set forth
in paragraph 3;

(iii)  ordering the parties to strike 3 candidates from the other party's
lists and rank the remaining nominees as set forth in paragraph 4;
and

(iv)   selecting the umpire as set forth in paragraphs 4 and 5.

(b)    Award petitioners whatever further relief the Court deems just and proper.


Date:  October 9, 2018                    Respectfully submitted,


　　　　/s/  Sean Thomas Keely
Sean Thomas Keely
Andrew A. Wooden
Freeborn & Peters LLP
230 Park Avenue, Suite 630
New York, New York 10169
Tel: +1.212.218.8760
Fax: +1.212.218.8761
skeely@freeborn.com
awooden@freeborn.com

James J. Boland (*pro hac vice pending*)
Freeborn & Peters LLP
311 South Wacker Drive, Suite 3000
Chicago, Illinois 60611
Tel: +1.312.360.6548
Fax: +1.312.360.6200
jboland@freeborn.com

*Attorneys for Petitioners*
*AXA Versicherung AG and Colisée Re*